UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAURICE BOLLINI and
LISA BOLLINI,

           Plaintiffs,

                                   Case No. 08-14608

v.

                                   Honorable Paul D. Borman
                                   United States District Judge

JOHNNY BOLDEN and MICHIGAN
STATE TROOPER C. BROWN and
MICHIGAN STATE TROOPER
A. MARTIN,

           Defendants.

_____/

## OPINION AND ORDER DENYING DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF PUNITIVE DAMAGES (DKT. NO. 37)

This matter is before the Court on Defendants' Motion *In Limine* on Punitive Damages. (Dkt. No. 37.) Plaintiffs have filed a response. (Dkt. No. 39.) Defendants did not file a reply. The Court held a hearing on Wednesday, September 14, 2011. For the reasons that follow, the Court DENIES the motion.

## I.    BACKGROUND

On April 14, 2010, this Court issued an Opinion and Order Denying Defendants' Motion for Summary Judgment, Granting Plaintiffs' Motion for Partial Summary Judgment as to Liability and Requiring the Parties to Submit Evidence on the Issue of Damages. (Dkt. No. 19.) The Court found that the Defendants violated Plaintiffs' clearly established right to be free from a warrantless search

1

and seizure of assets from a pole barn located within the curtilage of Plaintiffs' home and that the Defendants were not entitled to qualified immunity. A jury trial on damages is scheduled to commence on October 4, 2011. (Dkt. No. 35, Amended Scheduling Order.) Presently before the Court is Defendants' Motion *in Limine* on Punitive Damages. For the reasons that follow, the Court DENIES Defendants' Motion.

## II.   LEGAL STANDARD

"The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures-including motions *in limine* -in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir.1999). District courts have broad discretion over matters involving the admissibility of evidence at trial. *United States v. Seago*, 930 F.2d 482, 494 (6th Cir.1991).

## III.   ANALYSIS

The sole issue presented in Defendants' motion is whether Plaintiffs should be permitted to seek punitive damages in this case and, if so, whether the Court should limit the amount of such damages prior to the jury trial on damages. As a corollary issue, Defendants seek to exclude all testimony that relates to the issue of punitive damages.

"Punitive damages for deprivation of civil rights may be awarded when the defendant wilfully and intentionally violates another's civil rights or when the defendant acts with reckless or callous indifference to the federally protected rights of others." *Gordon v. Norman*, 788 F.2d 1194, 1199 (6th Cir. 1986)(citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)). The Sixth Circuit has "phrased

2

the standard for defendant's conduct to warrant punitive damages as grossly negligent, intentional, or malicious." *Hill v. Marshall*, 962 F.2d 1209, 1217 (6th Cir. 1992) (citing *Lewis v. Downs*, 774 F.2d 711, 715 (6th Cir.1985)). Defendants argue in their motion *in limine* that Defendants' conduct in the instant case cannot support an award of punitive damages as a matter of law and, even assuming it could, that Plaintiffs' request for punitive damages in an amount ten times the amount of total damages sustained is constitutionally excessive. The Court disagrees and concludes that Plaintiffs will be permitted to introduce evidence to the jury regarding their claim for punitive damages.

This Court, in its April 15, 2010 Opinion and Order, denied Defendants' claim of qualified immunity, holding (1) that Defendants violated Plaintiffs' Fourth Amendment rights by entering the pole barn located within the curtilage of their home pursuant to a non-judicially secured tax warrant, and tagging and then two weeks later seizing Plaintiffs' property and (2) that legal precedent of their right to be free from a warrantless seizure of property situated in closed private premises in furtherance of tax collection, was clearly established on July 15, 2008, when Defendants entered Plaintiffs' pole barn. Specifically, with respect to Defendant Bolden, the Court found it incredible that an officer of the State professed a lack of knowledge of or sensitivity to the Fourth Amendment rights of its citizens to be free from warrantless searches. The Court noted:

> When asked at his deposition whether he was familiar with the Fourth Amendment of the United States Constitution, Defendant Bolden responded, no, he was not. (Pls.' Mot. Ex. A, Bolden Dep. 37.) This is incredible! Indeed, it is shocking that in the day and age, that an officer of the State, charged with seizing assets from its citizens, is unaware of the right against unreasonable search and seizure guaranteed by the Fourth Amendment. When asked if there were any procedures that he was required to follow that should guide him when seizing property from private areas of individuals homes and businesses, Defendant Bolden stated that he could not remember. Supreme Court precedent, and Sixth Circuit interpretation of that

3

precedent, are clear on the issue of the unconstitutionality of effecting a warrantless seizure of assets, situated in closed private premises, in furtherance of tax collection.

(April 15, 2010 Opinion and Order, 15.)  Despite the Court's remarks regarding the shocking nature of Defendant Bolden's admitted lack of sensitivity to Plaintiffs' Fourth Amendment rights, Defendants contend that their conduct cannot, as a matter of law, support an award of punitive damages.  The Court disagrees.  While the Court expressed surprise, even disbelief, at Defendant Bolden's claimed lack of awareness of Plaintiffs' Fourth Amendment rights, the Court never condoned such professed ignorance or implied that it excused in any way Defendants' conduct in proceeding to seize the items from the pole barn without a judicially authorized warrant.[1]

The Sixth Circuit has held that:  "The allowance of [punitive] damages involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of fact." *Gordon*, 788 F.2d at 1199.

Although it is true that the evidence in this case may not support a finding of evil motive or intent, a recent decision in this district noted that "a jury could arguably determine that the claimed misconduct was committed with a callous indifference toward [Plaintiffs'] constitutional rights," or at least with "gross negligence," in a situation comparable to  Defendants' entrance onto Plaintiffs'

---

[1]  The Court rejects Defendants' contention, suggested in their reply brief, that Defendants should be absolved of any liability because they were merely following their supervisor's orders: "This argument, even if factually correct, does not entitle [Defendants] to qualified immunity because, 'since World War II, the "just following orders" defense has not occupied a respected position in our jurisprudence. Under the Supremacy Clause, public officials have an obligation to follow the constitution even in the midst of a contrary directive from a superior or in a policy.'" *Jacob v. Killian*, No. 10-1834, 2011 WL 4036078, at *7 (6th Cir. Sept. 12, 2011) (unpublished) (quoting *Kennedy v. City of Cincinnati*, 595 F.3d 327, 337 (6th Cir. 2010)) (internal citation omitted).

property and seizure of items from the pole barn without any regard to the Fourth Amendment implications of their conduct. *Ruth v. Ford*, No. 09-11278, 2010 WL 3245411, at *8 (E.D. Mich. Aug. 17, 2010) (permitting a claim for punitive damages to go forward in a § 1983 case involving an illegal stop and search of plaintiff's person and bag that resulted in only nominal damages to plaintiff, where plaintiff was stopped and searched without reasonable suspicion of criminal activity). The majority of cases cited by Defendants in support of their motion address the legal standards for remittitur of punitive damages awards, not the standard for denying a plaintiff the opportunity to claim punitive damages as a matter of law. The Court concludes that Plaintiffs have presented sufficient evidence to permit a reasonable jury to could conclude that Defendants were grossly negligent or callously indifferent to Plaintiffs rights when they proceeded to tag and seize items from Plaintiffs' pole barn without a judicially authorized warrant.[2]

Defendants also argue that, assuming an award of punitive damages could be supported on the evidence, Plaintiffs' request for punitive damages in an amount "ten times" actual damages is constitutionally excessive as a matter of law. As an initial matter, the Court notes that this issue would be better addressed once it presents itself, i.e. if the jury has made such an award. In any event, the Court declines to impose such a limit at this stage of the proceedings. As the following

---

[2] The Court expresses no opinion as to the validity of the underlying tax debt that supported the tax warrant. Based upon representations made to the Court at the September 14, 2011 hearing on Defendants' motion *in limine*, there appears to be no dispute between the parties, however, that at the time that the items were seized from the pole barn, there was an active and viable outstanding tax debt of which Plaintiffs were well aware, although they claim to have disputed its validity. Although the validity of the debt is not an issue in this case, the existence of the debt, and Plaintiffs' awareness that the Government was seeking to collect that debt, are directly relevant to the circumstances surrounding Defendants' presence on Plaintiffs' property to effectuate the seizure. At the hearing on this matter, the Court requested the parties to provide the Court with more detail as to the exact amount of the tax liability, and any efforts on Plaintiffs' part that had been made to contest the liability, at the time of the seizure of items from the Bollini's pole barn.

discussion suggests, there is no authority on which the Court could conclude that a punitive damage award that is ten times actual damages is for that reason alone constitutionally excessive as a matter of law.

In considering whether a punitive damages award is constitutionally excessive, "[t]hree considerations guide this inquiry:  The Supreme Court has established three indicia that courts should consider when deciding the reasonableness of a punitive damages award: (1) the degree of reprehensibility of the conduct; (2) the disparity between the harm suffered and the punitive damages award; and (3) the difference between the punitive damages and the civil penalties imposed in comparable cases." *Gibson v. Moskowitz, M.D.*, 523 F.3d 657, 664 (6th Cir. 2008).  Defendants do little more in their motion than cite the relevant standard for analyzing constitutionally excessive punitive damages awards and then assert, in a conclusory fashion, that consideration of these factors does not support a ten to one ratio suggested by Plaintiffs in the instant case.  But the matter is not so simple.  As the Sixth Circuit noted in *Gibson*:  "The second consideration-ensuring that exemplary damages . . . bear a 'reasonable relationship' to compensatory damages-has a long pedigree. Nothing tells us exactly what ratios are reasonable, but the Supreme Court has said that the ratio normally will be no more than 10 to 1." 523 F.3d at 664 (internal quotation marks and citations omitted).

That having been said, the Sixth Circuit has also recognized that where an invasion of constitutional rights involves minimal measurable economic harm, much higher ratios are constitutionally permissible:

> [T]his is a § 1983 case in which the basis for the punitive damages award was the plaintiff's unlawful arrest and the plaintiff's economic injury was so minimal as to be essentially nominal. The Supreme Court's cases on the ratio component of the

6

excessiveness inquiry-which involved substantial compensatory damages awards for economic and measurable noneconomic harm-are therefore of limited relevance. This Court and other courts have recognized that where injuries are without a ready monetary value, such as invasions of constitutional rights unaccompanied by physical injury or other compensable harm, higher ratios between the compensatory or nominal award and the punitive award are to be expected. Indeed, the Second Circuit has reasoned, we think correctly, that in cases where the compensatory award is very low or nominal, any appreciable exemplary award would produce a ratio that would appear excessive by this measure.

*Romanski v. Detroit Entertainment, L.L.C.*, 428 F.3d 629, 645-46 (6th Cir. 2005) (internal quotation marks and citations omitted). *See also Arnold v.Strathmoor Village, et al.* __F.3d__, 2011 WL 4056664, at *14-15 (6th Cir. 2011) (relying on the reasoning of *Romanski* to reaffirm that § 1983 damage awards present a special circumstance, concluding that "[b]ecause this is a § 1983 case involving constitutional violations, a higher ratio of punitive to compensatory damages is to be expected and such a ratio would not necessarily violate due process."); *Thompson v. Caruso*, No. 04-204, 2009 WL 559872, at * 1 (W.D. Mich. March 4, 2009) (relying in part on *Romanski*, and denying a request for remittitur of a punitive damage award with a ratio of 2,500:1 where prison guards were found to have violated prisoners' rights by authorizing their legal mail to be opened outside their presence).

Thus, not only is Plaintiffs' motion premature, making an analysis of the relevant factors an exercise in supposition, but the ten to one ratio suggested by Plaintiffs does not facially offend the constitutional parameters set forth by the Supreme Court and applied by the Sixth Circuit. *See Arnold*, 2011 WL 4056664, at *15 (recognizing that punitive damage awards in § 1983 cases may exceed a 10:1 ratio, but remitting an award to a single-digit ratio where the compensatory award was greater than nominal). This is an issue better addressed, if necessary, after the proofs on damages

7

have been received and after the jury has issued its damages award.[3]

## IV.   CONCLUSION

Accordingly, the Court DENIES Defendants' motion *in limine* to exclude evidence of punitive damages, and to limit, in advance of trial, the amount of punitive damages.

IT IS SO ORDERED.

_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  9-20-11

_____

[3] Defendants also move "to prohibit the Plaintiffs from testifying as to any opinions they may have as to the evil motive or intent or reckless or callous disregard by these Defendants in support of a claim for punitive damages." (Defs.' Mot. 6.) Defendants cite no law in support of this request and the Court finds nothing in the Federal Rules of Evidence that would permit this Court to issue a blanket ruling prohibiting Plaintiffs from telling the jury about conduct that they in fact observed or from expressing the inferences that they drew from any rationally-based perceptions of Defendants' behavior. Given the Court's ruling on the availability of punitive damages, Plaintiffs should be permitted to testify to any inferences they drew based on their rational perceptions of Defendants' conduct. *See* Fed. R. Evid. 701. Thereafter, Defendants are free to cross-examine.